Frazier, J.
This is an action in ejectment and was submitted to the court upon an agreed statement of facts. A brief summary of the facts is. as follows:
November 12, 1886, Alexander Miller, Sr., who owned about 800 acres of land in this county, made his last will. At that date, his wife, Sarah J. Miller, and the following children were living: Charles E. Miller, aged 11 years; Laura M. Miller, aged 15 years; Peter Miller, aged 20 years; Richard Miller, aged 22 years; Eliza J. Miller, aged 24 years; Mary E. Collins, aged 27 years; Alexander Miller, Jr., aged 30 years; John Miller, aged 32 years; and Howard Miller, aged 34 years.
At the date of the will, the said Richard Miller, Howard Miller and Mary E. Collins were married and then had children living.. All the other children were unmarried.
Alexander Miller, Sr., died June 9, 1887, and the said will was duly probated. Item 1 provides:
“I give and devise to my beloved wife, Sarah J. Miller, in lieu of her dower (a tract of land, describing it, containing 340 acres), to have and to hold the same during her natural life. * * # At the death of my said wife, I give and devise the above described real estate to my three children, viz.: Charles E. Miller, Laura M. Miller and Alexander Miller, the same to be divided between them equally, but if any of my said three children shall die without issue, the survivor or survivors of them shall take the portion or portions of such deceased child or children. ’ ’
Item 2 provides:
‘ ‘ I give and devise to my son Howard Miller, for and during his natural life only, the following described real estate: * * * At the death of my son Howard Miller, I devise said land so devised to him to his children.”
Item 3 provides:
“I give and devise to my son Richard Miller, for and during his natural life only, the following described real estate, to-wit; *632 * * * At the death of my son Richard Miller, I devise said real estate so devised to him, to the children of my said son Richard Miller.”
Item 4 provides:
“I give and devise to my daughter Eliza J. Miller in fee simple the following described real estate.” * * *
Item 5 provides:
“I give and devise to my daughter Mary E. Collins, wife of John Collins, in fee simple, the following described real estate.” * * *
Item 6 provides:
“I give and devise to my son Peter Miller, for and during his natural life only, the following described real estate: * * * At the death of my said son Peter Miller, I devise the land so devised to him, to his lawful heirs. ’ ’
Item 7 provides:
“I have given to my son John Miller what I consider about his fair proportion of my estate, and for that reason I give him the sum of $500 only.”
Item 8 provides that certain notes he holds against his children shall be turned over to them and not regarded as advancements.
Item 9 provides:
“If any of my children shall attempt, by any action at law or otherwise, to contest this will, or in any way undertake to get' any greater or other portion of my estate than I have in this will given them, then and in that event the devise herein to such child or children shall be void and the portion herein given to such child or children shall be equally divided between my children who do not attempt to disturb this will. ’ ’
Item 10 appoints executors of his will.
The widow elected to take under this will. She died January 20, 1901. On February 11, 1892, after the death of the testator and before the death of his mother, Sarah J. Miller, Alexander Miller, Jr., by quit-claim deed conveyed his interest in the undivided real estate devised to him and his brother, Charles E-. *633 Miller, and his sister, Laura M. Miller, to Jennie B. Knode, who afterward married the said Alexander Miller, Jr.
January 28, 1901, said Alexander Miller, Jr., executed a second deed to Jennie B. Knode Miller, for the purpose therein stated, of correcting an error in the description of the premises.
On the 4th day of April, 1902, after the death of the widow and the termination of her life estate given her by item one of the will, Charles E. Miller, Laura Miller (now Dawson), and Alexander Miller and Jennie B. Miller, wife of Alexander, mutually agreed upon a division of the real estate devised in Item 1 to the said Charles E. Miller, Laura Miller, and Alexander Miller, and executed quit-claim deeds to each other for the respective portions acquired by them in the division. By this division of the real estate described in Item 1, the said Jennie B. Miller, who had acquired Alexander’s undivided interest by the quitclaim deeds aforesaid, received 124.9 acres; said Charles E. Miller received 116.28 acres; and the said Laura Miller Dawson received 100 acres. . In order to equalize the division of said real estate, the defendant agreed to pay said Charles B. Miller $350 and said Laura Miller Dawson agreed to pay Charles Miller $100.
After this amicable division of the real estate described hi Item 1, said Charles E. Miller and Laura Miller Dawson went into possession of the portion thereof respectively obtained by each in said division, and said Jennie B. Knode Miller and her husband, Alexander, went into possession of the portion so acquired by the said Jennie B. in said division.
Alexander Miller, Jr., died January 31, 1908, without issue living or dead, leaving said Charles E. Miller and Laura Miller Dawson (plaintiffs here) surviving him.
Jennie B. Miller, his wife and widow, under the quit-claims aforesaid, has continued in possession of said tract of 124.9 acres, and is now in possession and occupancy thereof.
The plaintiffs, Charles E. Miller and Laura Miller Dawson, bring this action to recover possession of said 124.9 acre tract now in the possession of said Jennie B. Miller.
Both plaintiffs and the defendant are claiming title to said 124.9 acre tract under Item 1 of said will.
*634 Plaintiffs contend that, under Item 1 of said will, each of the three children named therein takes a defeasible estate with executory devise over; that upon the death of any of said three named children, at any time (no matter when), without issue living at his or her death, the survivor or survivors take the share of said deceased child; that Alexander, Jr., one of the devisees named in said Item 1, having died without issue, Charles E. and Laura M., who were living at his death, became entitled to his share devised to him by Item 1; that the division, or partition, of the land described in Item 1, at the death of the life tenant, between the three children, and the quit-claim deeds to each other create no estoppel against these plaintiffs.
As to the matter of estoppel, I am of the opinion that if, under the will, the plaintiffs are entitled to Alexander’s share because they survived him, the actual partition of the land and the quit-claim deeds to each other in no wise disturb, or alter, the limitations affixed to the devised estate. No new title was created by the partition or in consequence of the execution of said quit-claim deeds. Authorities are not necessary in support of this proposition.
The defendant contends that the three children named in Item 1 having survived their mother, the life tenant, each then acquired an indefeasible estate in the land devised to each by said Item 1.
The plaintiffs assert. that the principles announced by our Supreme Court in Parrish v. Ferris, 6 O. S., 563; Niles v. Gray, 12 O. S., 320; Taylor v. Foster, 17 O. S., 166; Piatt v. Sinton, 37 O. S., 353, and Durfee v. McNeil, 58 O. S., 238, are applicable and must govern in the construction of the will in question.
The will under consideration differs in important particulars from the wills in the above cases. It has no prototype in any of them. The doctrine laid down in the above cases is that:
‘ ‘ Where. there is an immediate devise to A, but if he dies without issue, then to B in fee, such devise is construed as giving A a fee with an executory devise over, in case A dies at-any time without leaving issue at his death, provided the will does not indicate a different intention upon the part of the testator; but if a different intention appears in the will, the words are to be construed -to carry out that intention. ’ ’
*635 The case of Baker v. McGrew, 41 O. S., 113, is an example, where the court found in the context of the will a different intent on the part of the testator and accordingly held that these words, ‘1 dying without issue, ’ ’ did not mean death of the devisee whenever it might occur, but that the contingueney contemplated by the testator was death without issue prior to the period of distribution of the estate.
“In eases where the disposition of the property which is devised over in case of death with a contingency, as in case of death without issue, is preceded by a prior estate for life, whicli is to begin in possession at the death of the testator, the words ‘in ease of death without issue’ may relate to three possible periods, viz.: the lifetime of the testator, the lifetime of the prior devisee, and the period thereafter.
“If by the words ‘in case of death without issue’ is meant death before the termination of the life estate, the devisee who survived that event will take an absolute interest in fee in possession, which is not defeated by his subsequent death without children or issue.” Underhill, Law of Wills, Vol. 1, p. 464.
Item 1 of this will gives the widow a life estate in all the land devised therein. It further provides:
“At the death of my wife, I give and devise the above described real estate (the real estate devised to her for life) to my three children, viz.: Charles E. Miller, La.ura M. Miller, and Alexander Miller, the same to be divided between them equally, but, if any of my said three children shall die without issue, the survivor or survivors of them shall take the portion or portions of such deceased child or children.”
Does the contingency of death without issue relate to, or mean, death at any time of said children; or does it relate to the period prior to the death of the wife and prior to the time of vesting the possession? The controversy here hinges upon this question.
The rule in Ohio is, as we have seen, that unless the context requires a different meaning to be given to the words ‘ ‘ dying without issue,” they are to be considered as meaning death at any time.
It is likewise a rule of construction .that words of survivor-ship should be referred to the period of time provided in the *636 will for distribution of the subject of the gift, unless a contrary intention is evidenced by the language of .the will. Remsen on Wills, p. 211, and eases cited in foot note; Sinton v. Boyd, 19 O. S., 30.
Both English and American authorities make no distinction in this regard between real and personal property.
Item 1 plainly contemplates and requires a division or distribution of the property between the children if living at the death of the lifq tenant. Only one division is contemplated, and that at the death of the life tenant. If plaintiffs’ contention is correct, then if all the.children survived the life tenant, at least two divisions would be required, one at the death of the life tenant, between the three, and'a second division when one of the three should die without issue. After a second division, it might happen that one or both of the other children might die childless, and thus it results that the property in Item 1 would be tied up during the lives of all three children.
This construction, as is said in Sumpter v. Carter (Ga.), 42 S. W. R., 325, where a will very much like the one under consideration here was before the court, would not only prevent the free alienation of property, but would violate the rule that divesting clauses, especially as to remainders, must be strictly construed so as to absolutely and indefeasibly vest the estate at the earliest possible period of time. The will in that case provided:
‘11 give and devise my whole estate to my wife for life * * * at my .wife’s death my whole estate to be divided equally between my six children (naming them), in case either of my said six children should die without leaving issue, then their part of my estate to be equally divided between my other children. ’ ’
The Supreme Court of Georgia decided that:
“Upon the death of the testator, each of the children took a vested remainder interest subject to be divested in favor of testator’s other children, as substituted devisees and remainder men, upon such child dying during the existence of the life tenancy without leaving a child who survived the life tenant.
“The vested remainder share of each child became absolute *637 and indefeasible upon Ms dying in the life tenant’s lifetime, leaving children, or upon his surviving the life tenant without children. ’ ’
In Ferguson v. Thomason, 9 S. W., 714 (Ky.), the will provided a life estate to the widow, with remainder to testator’s children. A codicil provided as follows:
“It is my further will that if any of my children should die without children or heirs of their body, the estate above devised to them shall be equally divided between my surviving children and the heirs of those that may die, in equal share, as my children.”
The court held:
“The will created a defeasible interest in the children, subject to the life estate of the mother, but on her death each child acquired an absolute estate in his individual share.”
And the court say:
“No iron rule can be established as applicable to words of survivorship. That would be unreasonable, because it would often violate the intention of the testator, which must be sought from the entire instrument. Where unexplained^ words equivalent to “dying without issue” are used," they'will be construed as meaning the death of the "distributee after that of the testator and before the time whiclr-may be fixed for distribution; so where an estate is devised with remainder over, but in the event the remainder man shall die childless, then to a third person, the words relating to survivorship will be restricted to the death of the remainder man before the termination of the life estate. We see no special reason why this rule should not be applied to devises of real estate as well as bequests of personalty. The will created a defeasible interest in the children, subject to the life estate of the mother. It fixes no particular time, by express words, when they should come into possession and enjoy it, but the testator must be regarded as having had in view that they should do so at the time fixed by law, to-wit, the termination of the life estate. The property was then subject 'to division among them, and in the absence of such an expressed intention, it should not be presumed that he intended their interest to be defeated by death without issue however far in the future it might occur.”
*638 In Lewis v. Shropshire, 68 S. W., 420 (Ky.), the will provided a life estate to the testator’s children, with a proviso that if any of the children should die without issue, his share should be equally divided among the testator’s surviving children. It was held that each child took his share subject to be defeated by his death without issue before the death of the life tenant, and upon the death of life tenant each child surviving took an absolute estate.
In the ease of Lee v. Mumford (Ky.), 1898, 44 S. W., 91, the will provides a life estate to the wife and at her death the property was to be equally divided between testator’s eleven children, and further provides:
1 ‘ In case of the death of any of my said children without leaving issue, my will is that the property devised to them shall pass to their brothers and sisters.”
In this case, it appears that the children survived the mother, the life tenant, divided the land among them, after which one of the children, having conveyed his portion to some third person, died without issue. Just as in this case, the surviving brothers and sisters brought suit to recover the land, and the court held that the children surviving the life tenant took an absolute fee, and that the vendee acquired a perfect title, that the words “dying without issue” were to be construed as referring to the time before the period of distribution.
Reference is had particularly to the holdings of the courts of last resort in Georgia and Kentucky on the construction of wills like the one under investigation here, as shown in the cases above cited, for the reason that, in cases where wills of the type of those in the above Ohio cases first mentioned have come before said courts for construction, they construe said wills just as our own Supreme Court does.
Our Supreme Court, in the Parrish case, supra, in support of its conclusions, cite Harris v. Smith, 16 Ga., 545; Daniel v. Thompson, 12 B. M. (Ky.), 662.
Daniel v. Thompson is still the law of Kentucky as to wills of the type of the Parrish and other Ohio eases above mentioned, *639 and is cited with, approval in Louisville Trust Co. v. Maddox (1898), 44 S. W., 632.
Judge Smith, of the Superior Court of Cincinnati, in the case of Pendleton v. Bowler, 27 W. L. Bul., 313, has, in an elaborate opinion, gathered up the results of the English cases. It is there shown that, since the statute I. Vict. C., 26, s. 39, the English law stands on precisely the same footing as our own. His examination of the English cases shows that, where wills of the type of the one under investigation here have come before the English courts of last resort, since* the enactment of the said statute, for construction, it is uniformly held that, when a period of distribution .at the death of the life tenant is -plainly indica,ted by the will, the words “dying without issue” should be referred to the period of the tenancy of the tenant for life.
In Item 1 of the will of Alexander Miller, Sr., the period of distribution at the death of the life tenant is plainly indicated. Prior to that time, each of the three named children had a vested estate in interest but not in possession. The vested estate in interest was subject to be divested on the happening of the contingency of dying without issue before vesting of possession, in which .event it would pass to the surviving child or children.
It is conceded in argument that the division of the land could take place only at the death of the life tenant. It is claimed that the testator, by use of the term “portion” in Item 1, refers to a time subsequent to the actual division of the property, i. e., that the term has reference to the individual or separate share of each child after division made.
In this will, in other items, the testator created various kinds of estates, life estates, unconditional remainders in fee, and fees simple. At the close of his will, he used the word “portion,” in the following connection:
“If any of my children shall attempt, by any action at law or otherwise, to contest this will or in any way undertake to get any greater or other portion of my estate than I have in this will given them, then and in that event, the devise herein to such child or children shall be void and the portion herein given to such child or children shall be equally divided between-my children who do not attempt to disturb this will.”
*640 It is plain to be seen, by his use of the word “portion” in this connection, that he means such estate or interest as each devisee or legatee would have at his (testator’s) death, because suits to contest wills must be brought within two years after the probate. Obviously, therefore, the term “portion” refers to the estate or interest of each devisee, of whatever quality it might be, at the death of the testator.
The words of the will devising the remainder, viz.: “At the death of my wife, I give and devise the real estate above mentioned, to my three children, Charles E. Miller, Laura M. Miller, and Alexander Miller, the' same to be divided between them equally” standing alone, would undoubtedly give an absolute and indefeasible estate in remainder to each of the three named children, which would vest in interest at the testator’s death (if then living), and in possession at the death of the life tenant, and the remainder share of each of said children who should die before the life tenant would -descend to such child’s heirs at law, whoever they might be, and vest in such child’s assigns by his deed made during the life tenancy.
The superadded words, “but if any of my said three children shall die without issue, the survivor or survivors of them shall take the portion or portions of such deceased child or children,’ do not change the vested remainder previously and expressly given to each child into a contingent remainder to only those children who survive the life tenant, but merely designate the contingent event upon which the remainder to each child may be divested prior to the time of its vesting in possession, at , the period of distribution, viz., at the death of the life tenant, and vest in favor of the surviving children and remainder men as substituted devisees.
The dying of a remainder man without issue, Mdiich is the sole contingency upon which such remainder man’s vested share otherwise distributable to him or her at the death of the life tenant is to be divested, can not be referred to a death before testator, whereby the whole remainder is to vest in the the' other children and remainder men, as survivors at his (testator’s) death, because he, by the terms of the devise, fixed a later date, viz., the death of the life tenant, for the distribution or vesting *641 in possession of the land devised in item one amongst the remainder men then entitled indefeasibily, and as the time when the remainder men were to be ascertained to take the share of a child dying previously without leaving issue living at the death of the life tenant; nor can the contingency of dying with-' out issue be made referable to the dying of any remainder man after the death of the life tenant, because, as heretofore shown, instead of one division at a fixed period, as the testator plainly directed, in the event all three of the remainder men should survive the life tenant, two divisions would be required, and this -vyould simply be making a will for the testator. Hence the irresistible conclusion is, the words ‘ ‘ dying without issue, ’ ’ as applying to the divestment of any of said three named children’s vested remainder in favor of the other children and remainder men as substituted devisees, clearly refer to a dying in the life time of 'the life tenant, so as to vest the remainder in the estate devised ^to the three named children indefeasibly in the survivor or survivors at the death of the life tenant, as intended by his will and directed in said item one.
If this be the correct solution, then it- follows that item one should be interpreted as if it read, “At the death of my wife, the life tenant, each of my three children is to have an equal share • in the land therein described,' absolutely, but if any of said children should die before the time I thus appoint for him or her to have his share vested indefeasibly in possession, without leaving children in esse, at that time, then and then only I 'give his share to the other child or children and remainder men gained in said item one who survive the period of distribution.”
Under this construction of the will, all three children having 'survived the life tenant, each then had an indefeasible estate in 'the undivided one third part of the land devised, and plaintiffs, after the division of the land and the execution of the quit- , claim deeds, had no longer any interest in or title to that part conveyed to the defendant. Hence, they must fail in this action and judgment will be for the defendant.